IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

| | |
|---|---|
| WESLEY D. WELLS, | CV 20-00007-H-BMM–JTJ |
| Plaintiff, | |
| vs. | FINDINGS AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE |
| TERRIE STEFALO, Montana State Prison, Religious Activities Coordinator, in her individual and official capacity, | |
| Defendant. | |

Plaintiff Wesley Wells ("Wells") filed the operative Amended Complaint in this action on March 2, 2020, pursuant to 42 U.S.C. § 1983, alleging violations of his constitutional rights and the Religious Land Use and Institutionalized Persons Act ("RLUIPA") (42 U.S.C. §§2000cc et seq.) (Doc. 7). Wells is representing himself and was a prisoner at Montana State Prison ("MSP") at the time he filed the action. *See Id.* at ¶2. He is proceeding in forma pauperis. *See* Order (Doc. 6.)

Defendant Terrie Stefalo ("Stefalo") filed a motion to dismiss on June 27, 2020 (Doc. 12), and, following an extension, Wells responded on August 7. With Stefalo's reply filed August 21 (Doc. 16), the motion is now fully briefed.

For the reasons explained below, the Court recommends granting Defendant's motion to dismiss. Because the Plaintiff did not properly exhaust his

administrative remedies, barring him from suit, the Court does not reach the merits of his constitutional and RLUIPA claims.

I.      Wells' Amended Complaint

The following facts are taken from the Plaintiff's Amended Complaint.

Wesley Wells is an enrolled member of the Blackfeet Nation and a lifelong practitioner of the Blackfeet traditional belief system. (Doc. 7 at ¶¶12-13.) Since he has been at MSP, he has taken part in these practices regularly in the MSP Religious Activities Center, which was, at the times relevant to this action, managed by Defendant Stefalo. (Doc. 7 at ¶15.) In late 2019, a special event was planned called the Native American Spiritual Day, which would include practicing these traditions, visits from Native American dignitaries, and dinner. (Doc. 7 at ¶¶16 - 17.)

Attendance at this event was governed by MSP Operational Procedure ("OP") 5.5.101, Special Activities, which states that "[a]n inmate must have at least six months clear conduct prior to the date(s) of the special activity in order to attend." MSP OP 5.5.101(D)(2), quoted at Doc. 7 at ¶ 20 and filed as Exh. B. to the Am. Compl. (Doc. 7-1, at 3-6.) Wells was not allowed to attend the December 28, 2019 event, because he did not have six months of clear conduct prior to that date. Wells did not file an administrative grievance at the time he was denied permission, and the Amended Complaint does not state the date on which he was

denied. Wells did send Stefalo an Offender/Staff Request (OSR) Form on

December 3, 2019, stating that he believed denying his attendance was a violation

of his rights. (Doc. 7 at ¶ 8, and Doc. 7-1, at 1.) (An OSR, colloquially known as a

kite, is the standard method by which inmates who have questions or problems can

get a written response from prison staff. ("Inmate/Staff Communication Methods",

MSP OP 3.3.5(III)(A)(2)(a), available online at

https://cor.mt.gov/Policy/MSPprocedures.)) Stefalo responded the next day and

cited the six months clear policy and Wells' tardy signup as the reasons Wells

could not attend the special event. (Doc. 7-1, at 1.)

As a result of this situation, Wells asserts the following legal claims: Stefalo

placed an undue burden on Wells' right to freely engage in his religion in violation

of the RLUIPA; the use of the MSP OP 5.5.101 amounted to cruel and unusual

punishment in violation of the 8th Amendment of the United State Constitution; the

policy placed a substantial burden on Wells' right to practice his religion, in

violation of the First Amendment; and the policy did not apply to all religious

practices equally in violation of the 14th Amendment. (Doc. 7, at ¶ 29- 32.) Wells

admits he did not file a grievance but contends that because the grievance policy,

MSP 3.3.3, does not allow grievance of disciplinary actions, he was not entitled to

grieve the denial of permission, obviating the exhaustion requirement prior to

filing. (Doc. 7, at ¶ 7.)

II.      Failure to exhaust administrative remedies

A. Propriety of the motion to dismiss

Stefalo has filed a motion to dismiss, both on substantive grounds regarding the constitutional and RLUIPA claims, and on the preliminary ground of failure to exhaust administrative remedies. (Doc. 12.) As an initial issue, Stefalo asks the Court to take judicial notice of MSP OP 3.3.3, the Inmate Grievance Program, without converting the motion to dismiss to a motion for summary judgment. (Doc. 12, at 14 – 15.) Wells himself submitted MSP OP 5.5.101 as an exhibit to his Amended Complaint, but also refers to and quotes MSP OP 3.3.3 in ¶¶ 7, 9 - 10. (Doc. 7 and 7-1.) The Court finds that it can take judicial notice of the complete text of MSP 3.3.3. Under Fed. R. Evid. 201(b), the "court may judicially notice a fact that is not subject to reasonable dispute because it:  (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." MSP's policy is publicly available on the DOC website, cited above, and its operative phrases are quoted in both parties' briefs, making its substance undisputed. Therefore, the Court can consider the text of 3.3.3 without converting Defendant's motion to dismiss to a motion for summary judgment. (As a practical matter, the outcome would be the same. There are no undisputed relevant facts.)

The Ninth Circuit considers the issue of whether a Plaintiff has exhausted administrative remedies as similar to an affirmative defense—it must be raised at the outset. As such, it will infrequently be subject to a motion to dismiss, since in the usual course, a prisoner plaintiff does not have an obligation to plead exhaustion in the Complaint. However,

> "[i]n those rare cases where a failure to exhaust is clear from the face of the complaint, a defendant may successfully move to dismiss under Rule 12(b)(6) for failure to state a claim. *See id.* at 215–16, 127 S.Ct. 910; *Scott v. Kuhlmann,* 746 F.2d 1377, 1378 (9th Cir.1984) (per curiam);[…] *Aquilar–Avellaveda v. Terrell,* 478 F.3d 1223, 1225 (10th Cir.2007) ("[O]nly in rare cases will a district court be able to conclude from the face of the complaint that a prisoner has not exhausted his administrative remedies and that he is without a valid excuse.").

*Albino v. Baca*, 747 F.3d 1162, 1169 (9th Cir. 2014) (internal quotation omitted). In this instance, Wells has, in fact, provided the necessary information regarding exhaustion on the face of his Amended Complaint, making the issue ripe for adjudication.

### B. Requirements of Exhaustion

The Prison Litigation Reform Act ("PLRA")'s exhaustion requirement states:

> [n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

> 42 U.S.C. § 1997e(a); *see also Porter v. Nussle*, 534 U.S. 516, 524-25

(2002); *Booth v. Churner*, 532 U.S. 731 (2001). A prisoner must "complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court." *Woodford v. Ngo*, 548 U.S. 81, 93 - 97 (2006). Exhaustion is mandatory. *Booth*, 532 U.S. at 741; *Jones v. Bock*, 549 U.S. 199, 211 (2007). "Exhaustion should be decided, if feasible, before reaching the merits of a prisoner's claim." *Albino v. Baca*, 747 F.3d 1162, 1170 (9th Cir. 2014). As such, the Court will analyze the failure to exhaust defense first.

The defendant bears the burden of proving failure to exhaust. *See Brown v. Valoff*, 422 F.3d 926, 936 (9th Cir. 2005). If the defendant initially shows that (1) an available administrative remedy existed and (2) the prisoner failed to exhaust that remedy, then the burden of production shifts to the plaintiff to bring forth evidence "showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Albino v. Baca*, 747 F.3d 1162, 1172 (9th Cir. 2014). The prisoner must produce evidence demonstrating that "the local remedies were ineffective, unobtainable, unduly prolonged, inadequate, or obviously futile." *Williams v. Paramo*, 775 F.3d 1182, 1191 (9th Cir. 2015) (internal citations and quotation marks omitted).

"The ordinary meaning of the word 'available' is 'capable of use for the accomplishment of a purpose,' and that which 'is accessible or may be obtained.'" *Ross v. Blake*, 136 S.Ct. 1850, 1858 (2016) (citing *Booth*, 532 U.S., at 737–738.) Therefore, inmates must exhaust those "grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of.'" *Id.* at 1859 (quoting *Booth*, 532 U.S., at 738.)

There are three general situations that can render a prison or jail grievance process unavailable to an inmate. First, an administrative procedure is not available, and therefore need not be exhausted, "when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Ross*, 136 S.Ct., at 1859.

Second, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use. In this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." *Id.* "When rules are so confusing that no reasonable prisoner can use them, then they're no longer available." *Id.* (internal quotation marks and alteration omitted). However, the procedures need not be sufficiently "plain" as to preclude any reasonable mistake or debate with respect to their meaning. *Id.* Therefore, when an administrative

process is susceptible of multiple reasonable interpretations, Congress has determined that the inmate should err on the side of exhaustion. *Id.*

Finally, administrative remedies will be deemed unavailable if "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation" or if administrators otherwise interfere with an inmate's pursuit of relief. *Id.* at 1860. For example, if the prison improperly processed an inmate's grievance, if prison officials misinformed an inmate regarding grievance procedures, or if the inmate "did not have access to the necessary grievance forms within the prison's time limits for filing the grievance," the remedies will be considered unavailable. *Albino*, 747 F.3d at 1172-73; *see also McBride v. Lopez*, 807 F.3d 982, 987 (9th Cir. 2015) (holding that an inmate's fear of retaliation may suffice to render the grievance process unavailable, if the prisoner (1) "provide[s] a basis for the court to find that he actually believed prison officials would retaliate against him if he filed a grievance," and (2) "demonstrate[s] that his belief was objectively reasonable").

Under the PLRA, prison regulations define the exhaustion requirements. *Jones*, 549 U.S. at 218. MSP OP 3.3.3(III)(A)(2) explicitly governs the grievance process and states that "…disciplinary, and any other decision which is subject to a separate appeal procedure or administrative review process, are not grievable under the inmate grievance program." In contrast, grievable issues include "…written

policy or procedures…" and "religious issues," among other things. MSP OP

3.3.3(III)(B)(1). With the exception of emergency grievances, the Inmate

Grievance Program involves four steps: (1) informal resolution, (2) formal

grievance, (3) appeal to the Warden, and (4) appeal to the Director of the DOC.

MSP OP 3.3.3(III)(E), (III)(F), (III)(I), (III)(K). There are timelines for properly

submitting grievances. MSP OP 3.3.3(III)(D). "If an inmate fails to advance to the

next level of the grievance program within the stated time limit, he will be

considered to have forfeited the opportunity to exhaust his administrative remedies

under the inmate grievance program." MSP OP 3.3.3(III)(D)(5).

C. Analysis

Wells' assertions about exhaustion appear to rely on the plain sense of the

term "unavailable". In his Amended Complaint, Wells makes two statements: he

did not exhaust his administrative remedies, because there was no grievance policy

available in this circumstance; and he provided notice to Stefalo of his complaint

regarding MSP Operational Procedure 5.5.101. He does not allege that any

procedure was opaque, or that Stefalo deliberately thwarted his attempts to grieve

his denial. (In fact, she appears to have responded within a day to his

communication about the policy. (Doc. 7-1 at 1.)) He relies entirely on his

interpretation of the text of the grievance procedure to avoid the requirement of

exhaustion. The questions the Court must resolve, then, are whether he had a

procedure available to exhaust, and whether his memo to Stefalo exhausted any procedure.

MSP policy forbids Wells to grieve his previous disciplinary action under MSP OP 3.3.3(III)(A)(2). (Doc. 7, at 2-3.) Discipline is not grievable. As a result, in Wells' view, if he couldn't grieve the discipline that had gotten him written up within the trailing six-month window for MSP OP 5.5.101 purposes, he was entitled to file, without grievance, a Complaint based on the consequences of that discipline. In this conclusion, Wells is incorrect.

There is nothing in Wells' Complaint that asserts he was not originally properly disciplined. His view is that not being able to go to the special event is an additional punishment, added to his prior punishment, and therefore a disciplinary action that he could not grieve. His problem is with MSP OP 5.5.101. He states "…the denial was triggered by a disciplinary write-up less than six months prior to the event," which removes the denial from the scope of 3.3.3, since disciplinary measures are not grievable. (Doc. 15, at 3.)

However, by the plain language of MSP OP 3.3.3(III)(B)(1), both "policy and procedures", and "religious issues", are grievable. His complaint is not the fact of his original discipline, but the further policy (5.5.101) that such prior discipline excludes him from the special activity, a policy that he could have grieved at the moment it was applied to him. Alternatively, his concern that his religious

practices are thwarted is a "religious issue" that is also grievable. It is a distorted reading of the grievance policy to construe it to forbid Wells from grieving either the policy and procedures of 5.5.101 or his ability to practice his religion, given that both of those topics are explicitly included as grievable.

Wells also mistakenly relies, in an offhand way, on a section of MSP OP 5.5.101 that mentions religious activities to claim that 5.5.101 should not apply to Native American Spiritual Day. (Doc. 7, at ¶ 21.) In the definitions section, a special activity or event is defined as "an activity or event held on the grounds of MSP on a specified date, time period, and place, attended by approved inmates and/or guests." The policy further states that "Activities or events that are governed by other policy or procedure or **are regular, routine, scheduled activity such as** recreation, meals, **religious services,** school, work, visiting, treatment programs, library, tours, etc., are not considered special activities." (Emphasis added.) MSP OP 5.5.101(II). On its face, this policy differentiates between the special activities it governs, which require extensive additional procedure and planning, and activities such as the religious activities that Wells states he usually attends, which are the regular weekly religious services. The mere mention of religious services in this paragraph does not exempt the special Native American Spiritual Day from its ambit.

It is clear from Wells' admission and the process outlined in the MSP

grievance procedure that he did not exhaust his administrative remedies. He did not use the proper form or follow other aspects of the outlined procedure, which must be followed assiduously. His mistake about the meaning of MSP OP 3.3.3 does not excuse his failure to exhaust, as "Congress has determined that the inmate should err on the side of exhaustion." *Ross*, 136 S.Ct., at 1859.

The final question, then, is whether Wells' OSR to Stefalo should somehow be construed as a grievance. The Ninth Circuit has held that, in very limited circumstances, a procedural flaw can be excused in the analysis of whether an inmate exhausted his administrative remedies. In *Reyes v. Smith*, an inmate proceeded through three layers of administrative procedure regarding his medical care but failed to name all of the staff involved in the situation related to his grievance, as required by policy. 810 F.3d 654 (9th. Cir. 2016). The District Court dismissed on exhaustion grounds, but the Ninth Circuit Court of Appeals reversed. The Court ruled that the administrative process used by the plaintiff had fulfilled its functions under the PLRA, and therefore, the prisoner could proceed on his claim despite failure to exactly exhaust his remedies. 810 F.3d at 659.

In this case, however, the OSR cannot be considered sufficient. The point of the administrative procedures is not merely to provide notice to the authorities, but also, to provide a process by which legitimate grievances can be analyzed and redressed. Importantly, the appeals in the grievance procedure advance an inmate's

claim beyond the initial deciding official, through layers of supervisory review. In that manner, a decision by a line officer can be reviewed by a more senior official with a broader perspective of policy and less personal involvement in the situation. By not using the proper procedure and filing the multiple appeals available through the administrative system (as well as quite possibly not filing within the proper timeframe), Wells did not allow thorough review of his claim by MSP. Wells' OSR was insufficient to exhaust his administrative remedies.

III.    Conclusion

Because Wells failed to carry his burden of exhausting his administrative remedies, under the terms of the PLRA he is not entitled to file suit over his inability to attend Native American Spiritual Day. Normally, "[u]nless it is absolutely clear that no amendment can cure the defect . . . a pro se litigant is entitled to notice of the complaint's deficiencies and an opportunity to amend prior to dismissal of the action." *Lucas v. Dep't of Corr.*, 66 F.3d 245, 248 (9th Cir. 1995). However, in the case, Wells cannot cure. He cannot travel back in time and timely exhaust the administrative procedure; therefore, his Complaint must be dismissed.

Based on the foregoing, the Court enters the following:

RECOMMENDATION

1.  Defendant Stefalo's motion to dismiss as to failure to exhaust should be

GRANTED;

2. The motion to dismiss as to the other claims should be DENIED as moot;

3. The Clerk of Court should be directed to close this matter and enter judgment pursuant to Rule 58 of the Federal Rules of Civil Procedure.

4. The Clerk of Court should be directed to have the docket reflect that the Court certifies pursuant to Rule 24(a)(3)(A) of the Federal Rules of Appellate Procedure that any appeal of this decision would not be taken in good faith.


## NOTICE OF RIGHT TO OBJECT
## TO FINDINGS & RECOMMENDATION
## AND CONSEQUENCES OF FAILURE TO OBJECT

The parties may file objections to these Findings and Recommendations within fourteen (14) days after service (mailing) thereof.[1]  28 U.S.C. § 636.  Failure to timely file written objections may bar a de novo determination by the district judge and/or waive the right to appeal.  This order is not immediately appealable to the Ninth Circuit Court of Appeals.  Any notice of appeal pursuant to

---

[1] Rule 6(d) of the Federal Rules of Civil Procedure provides that "[w]hen a party may or must act within a specified time after being served and service is made under Rule 5(b)(2)(C) (mail) . . . 3 days are added after the period would otherwise expire under Rule 6(a)." Therefore, since Mr. Wells is being served by mail, he is entitled an additional three (3) days after the period would otherwise expire.

Fed.R.App.P. 4(a), should not be filed until entry of the District Court's final judgment.

DATED this 13th day of January, 2021.

John Johnston
United States Magistrate Judge